CITY OF OMAHA V. FANNIE M. CROFT, TRUSTEE, ET AL.

FILED MARCH 21, 1900.   No. 9,172.

| 60 | 57 |
| 61 | 165 |

1. **Municipal Corporation:** LIABILITY FOR ACTS OF OFFICERS: ULTRA VIRES: RATIFICATION: TRESPASS: DAMAGES. A municipal corporation is not civilly liable for the acts of its officers appointed to act for the corporation, which, in their nature, are wholly and necessarily outside of the powers of such officers; but such unauthorized acts may be adopted and ratified by other officers of such corporation, acting upon a matter or regarding a subject within the scope of their general powers and authority, although such unauthorized acts, in the manner performed, constituted a trespass; and when so adopted and ratified, the corporation would be liable for the damages occasioned thereby.

2. **Ratification:** QUESTION FOR JURY. The question of ratification or adoption of the unauthorized acts of the officers of a municipal corporation, by those having authority to act in the premises, is a question of fact, and, when properly submitted to a jury, its finding thereon will not be disturbed in this court, if supported by sufficient competent testimony.

3. **Civil Liability of Corporation:** OPENING OR WIDENING OF STREETS: CONDEMNATION. A municipal corporation is civilly liable in

damages for the wrongful acts of its officers, which relate to, and arise out of, matters or transactions within the general powers of the corporation, and in respect to which there may be a corporate liability, and if such officers, under the authority of the corporation to open or widen streets or boulevards, commit a trespass upon and seize and appropriate private property for such purposes, without complying with the statute providing for the condemnation of such private property, the corporation is liable in damages therefor.

4. **Suit for Damages:** Dedication Ipso Facto. In a suit for damages for the seizure and appropriation of private property for street or boulevard purposes, a judgment in such action will work a dedication of the property so appropriated to the corporation for the purposes for which it was taken.

5. **Instructions.** An instruction to the jury set out in the opinion not approved, but *held* not to have misled the jury, and not prejudicial error.

Error to the district court for Douglas county. Tried below before Scott, J. *Affirmed.*

*W. J. Connell,* for plaintiff in error.

*Charles Ogden* and *Joel W. West, contra.*

Holcomb, J.

Suit was instituted in the district court of Douglas county by plaintiff, defendant in error, to recover for the market value of land alleged to have been appropriated by the city of Omaha, plaintiff in error. The plaintiff alleged, in substance, that in the month of October, 1894, the defendant seized and appropriated to its own use a strip of land 50 feet in width and 330 feet in length, staked off and graded the same for boulevard, to plaintiff's damage in the sum of $6,500. It is also alleged that no sum had been paid by the city for said land, and no proceedings had been taken to condemn the same by the exercise of the right of eminent domain. The answer of the defendant city denies that it ever, in any manner, seized or appropriated the strip of land described in the petition, and says that if said strip of ground is traveled

by persons or vehicles, it is without the knowledge or authority of the defendant; that the defendant consents to the plaintiffs or others owning said land at once fencing or inclosing the same, and preventing any further travel thereon, which, if it exists or has existed, it charges, was with the consent, connivance or permission of the plaintiffs for the purpose of commencing and maintaining the action for damages against the city. The corporate character of the defendant is admitted, and a denial is entered as to the other allegations of the petition. The reply denies the affirmative allegations of the answer. In due time a trial was had to the court and a jury, resulting in a verdict and judgment against the city for $800, with interest thereon amounting to $74.66. The case is brought here for review of alleged errors committed in the court below.

On the trial of the case it is made to appear by the evidence that certain streets in the city of Omaha, by ordinance of the city council, had been widened and turned into a boulevard, and placed under the control and supervision of the board of park commissioners, whose creation, powers and duties are defined by section 101b, chapter 12a, of the Compiled Statutes of 1899, the same being the metropolitan city act of this state. Among other things, the section referred to provides for the appointment of a board of park commissioners, composed of five members, to be appointed by the judges of the district court, and defines their duties as follows: "It shall be the duty of said board of park commissioners to lay out, improve and beautify all lands, lots or grounds now owned, or hereafter acquired for parks, parkways or boulevards"; and also, "In each city of the metropolitan class there shall be a board of park commissioners who shall have charge of all the parks and public grounds belonging to the city, with power to establish rules for the management, care and use of public parks, parkways and boulevards, and it shall be the duty of said board from time to time to devise, suggest and recommend to

the mayor and council a system of public parks, park-
ways and boulevards or additions thereto, * * * and
to designate the lands, lots or grounds necessary to be
used, purchased or appropriated for such purpose. And
thereupon it shall be the duty of the mayor and council
to take such action as may be necessary for the appro-
priation of the lands, lots or grounds so designated, the
power to appropriate lands, lots or grounds for such pur-
pose being hereby conferred upon the mayor and coun-
cil."

The boulevard mentioned began on Ames avenue,
which seems to be one of the prominent streets of the
city, and thence runs northward. Immediately south of
Ames avenue, connecting with the boulevard mentioned,
is a street known as Twentieth street, and upon which is
situated the property, the subject of this controversy. A
petition of the citizens of Omaha was presented to the
council, praying for the extension of the boulevard south-
ward along the said Twentieth street, and other streets
not here necessary to mention. A committee of the coun-
cil viewed the location, and recommended the extension
of the boulevard as petitioned for, the report of the com-
mittee being accompanied by a proposition or recom-
mendation from the board of park commissioners to the
effect that the board agree to accept and maintain a
boulevard on said Twentieth street, and other streets
therein mentioned, whenever the mayor and city council
would cause Twentieth street to be opened 100 feet wide,
and cause the streets mentioned, including Twentieth
street, to be graded to a uniform grade, and to dedicate
such streets as boulevards, and place them under the
charge and control of the park commission. An ordi-
nance was then introduced and passed by the council pro-
viding as follows:

"Section 1. That the following named streets in the city
of Omaha be and are hereby designated for a driving
boulevard for carriages and light vehicles: Nineteenth
street from Chicago street north to Ohio street; thence

west on Ohio street to north 20th street; thence north on 20th street to Ames avenue.

"Sec. 2. That said boulevard be and is hereby placed under the control of the park commission for the purpose of having said commission take charge of the said boulevard and to occupy, beautify and maintain the same in such a manner as the said park commission may determine; provided the mayor and council reserve unto themselves the right to control the use and traffic thereon.

"Sec. 3. That this ordinance take effect and be in force from and after its passage."

No action appears to have been taken by the council towards widening any of the streets over which the proposed boulevard was to extend. It appears that the Twentieth street mentioned in the ordinance quoted was sixty-six feet in width, except where abutted by plaintiff's land, an unplatted tract, the street there being only thirty-three feet in width, the land in controversy occupying the other half of the street, were it widened so as to be of uniform width during its entire length. Under the above ordinance the board of park commissioners took possession of the streets mentioned, and caused the same to be surfaced and graded to a proper level, and in so doing took possession of a strip of plaintiff's land thirty-three feet in width and 330 feet in length, thereby making the said Twentieth street of the uniform width of sixty-six feet.

It is conceded that the park commission was without authority to act for defendant city in the matter of widening streets, or appropriating private property for such purposes, and that such acts were in no way valid or binding upon the city, unless the same had been adopted or ratified by the proper city authorities, thus making such unauthorized acts those of the city itself; and the case was tried upon the theory that, before the city became liable for the acts of the park commission in seizing plaintiff's land and using the same for boulevard purposes, a ratification thereof must be shown to have been

made by the officers and agents of the city having authority to condemn the land in the first instance. The jury were instructed: "If the board of park commissioners did wrongfully appropriate said strip of land, the defendant city would not be liable for such strip unless such appropriation was afterwards ratified by the defendant city." The ordinance quoted authorized the park commission to take possession of the street mentioned, and maintain the same as a boulevard for driving purposes; and the evidence shows that, assuming to act under the authority given them by ordinance, they entered upon the plaintiff's land, seized the same, parked, surfaced and graded it, so as to make it suitable for the purposes intended, and maintained it as such, sowing grass-seed on the sidewalk space, grading up the centre, and continuously keeping employed, at the expense of the city, a person in charge of, and who was employed in sprinkling, keeping and maintaining in proper condition, such street as a boulevard; and that all of the expense in connection with such control, labor and supervision was, by ordinance of the city council, allowed and directed to be paid out of the proper funds of the city set aside for such purpose. It also appears that said street was maintained and kept open for public travel, and was in continuous use by the public, by pedestrians and vehicles, as a public highway. The question of ratification having been properly submitted to the jury, and resulting adversely to the contentions of the city, this court can not disturb such finding, if supported by sufficient competent testimony, which we think it is. The owner has been deprived of the use of his property. The city, through its officers and agents, has taken possession of it, and is using it for the benefit of the public. It is being used and maintained as a public thoroughfare. The unauthorized acts of the park commission have been adopted and ratified by the officers and agents of the city having authority to act in the premises. The city is in as full, complete and unrestricted possession of the property as it would be, and is using the

same for boulevard purposes to the same extent as it could, had the property been taken by proceeding in condemnation in the exercise of the right of eminent domain. This, in our judgment, constitutes an appropriation of the property, which renders the city liable to the owners for its fair market value.

Section 29 of the charter act (Compiled Statutes, ch. 12a) provides: "Whenever it shall become necessary to appropriate private property for the use of the city for * * * parkways, boulevards, * * * and such appropriation shall be declared necessary by ordinance, the mayor, with the approval of the council, shall appoint three disinterested freeholders of the city, who after being duly sworn to perform the duties of their appointment with fidelity and impartiality, * * * shall assess the damages to the owners of the property and parties interested therein respectively taken by such appropriation." Provisions are also made for the payment or deposit of the damages so assessed, and for appeals from such assessment. It is urged by counsel for the city that, in view of the provisions referred to for condemnation of private property for boulevard purposes, the acts of the park board and city council are void, and of no binding effect upon the city, and that no liability is created thereby. We do not think the principle invoked is applicable to the case at bar. If the acts of the park board were adopted or ratified by the city council, as we think they were, and the council was acting upon a matter or regarding a subject within the scope of their general power and authority, although such acts, in the manner performed, constituted a trespass, yet the city would be liable for the damages occasioned thereby. It is said by Judge Dillon, in the fourth edition, section 969, volume 2, of his excellent work on Municipal Corporations: "The principle that a municipal corporation is bound by the acts of its officers only when within the charter or possible scope of their general powers, and that acts which in their very nature are wholly and necessarily, under all

circumstances, outside of the powers of the corporation, or of the officers appointed to act for it, and therefore must be known to all persons to be so, are void as respects the corporation, is vital; and the opposite doctrine has no support in reason, and very little, if any, in the judgments of the courts." In section 971 the author lays down the following principle: "Cases such as those just mentioned are to be distinguished from others which resemble them in the circumstance of relating to wrongful acts, but which arise out of matters or transactions within the general powers of the corporation, and in respect of which there may be a corporate liability. Thus, if in exercising its power to open or improve streets, or to make drains and sewers, the agents or officers of a municipal corporation, under its authority or direction, commit a trespass upon, or take possession of, private property, without complying with the charter or statute, the corporation is liable in damages therefor." The numerous authorities cited by the author abundantly substantiate the principle enunciated. The rule is reasonable and is amply sustained. In the case of *Soulard v. City of St. Louis*, 36 Mo., 546, 552, in the opinion, it is said: "In this case the city proceeded to take and appropriate the plaintiff's property without pursuing the mode prescribed in its charter authorizing it to enter upon and use for its own purpose the land of another whenever it should be considered necessary or expedient for the furtherance of the public interests. The act done, then, was without authority of law; it was wrongful, and amounted to a trespass." Further on it is said: "A corporation is civilly responsible for damages occasioned by an act, as a trespass or tort, done at its command, by its agents, in relation to a matter within the scope of the purpose for which it was incorporated." In the syllabus of the same case, it is held: "A corporation is civilly responsible for damages occasioned by an act, as a trespass or tort, done at its command, by its agents, in relation to a matter within the scope of the purpose for which it was incorporated.

City of Omaha v. Croft.

Where a municipal corporation opened a street through the lands of an individual without first having the land ·condemned and damages assessed in the manner provided by its charter, in an action against such corporation for the damages sustained the value of the land taken will be the measure of damages, and a judgment for such damages will work a dedication of the land to the corporation." See also, *Mayor and Council of Rome v. Jenkins*, 30 Ga., 154; *City of Denver v. Peterson*, 36 Pac. Rep. [Colo.], 1111.

Objections are made to the admission of evidence and several instructions, which relate to questions heretofore discussed, and they will not be further noticed.

Objection is also made to the instruction of the court to the jury with reference to the method or arriving at the amount of damages sustained, which is as follows: "If you find from the evidence and a preponderance thereof that the land in question was wrongfully and without authority of law taken by the board of park commissioners and appropriated without the consent of the plaintiff for boulevard purposes, and that defendant city afterwards ratified such taking, and you find the other material allegations in plaintiff's petition have been established by a preponderance of the evidence, then you would be authorized in allowing the plaintiff the highest market value of said strip of ground for any purpose for which it was adapted at the time of the taking by said board as you find the same to be established by a preponderance of the evidence, together with interest thereon at 7 per cent per annum from the first day of November, A. D. 1894." It is urged that the language is erroneous and prejudicial to the defendant city, wherein it is said to the jury: "You would be authorized in allowing the plaintiff the highest market value of said strip of ground for any purpose for which it was adapted at the time of the taking by said board, as you find the same to be established by a preponderance of the evidence."

9

The evidence disclosed that the tract of land was suitable for residence property, and also available for use for storage, warehouse or manufacturing pur= poses, because of its proximity to a belt-line railroad encircling the city. The court evidently intended the language, and it was probably so understood by the jury, as telling them that if the property was more suitable for one purpose than another, as shown by the evidence, they were authorized to return a verdict for its market value for that purpose for which it would bring the highest price.

In *Lowe v. City of Omaha*, 33 Nebr., 588, in the syllabus, it is held: "The market value is not what the property is worth solely for the purpose for which it is devoted, but the highest price it will bring for any and all uses to which it is adapted, and for which it is available." In the opinion, by Justice NORVAL, it is said: "If it [the property] was worth most in the market as a residence the plaintiff was entitled to have such value considered. But if it would have sold for the highest price for some other use to which it was adapted, she was entitled to that. The market value of anything is the highest price it will bring for any and all uses."

In a New York case, *In re Furman Street*, 17 Wend. [N. Y.], 649, 670, the writer of the opinion says: "In both cases the proper inquiry is, what is the value of the property for the most advantageous uses to which it may be applied."

The suit was brought to recover as damages the value of the land appropriated. Different witnesses testified as to its market value. The uses for which it was adapted entered into the valuations placed thereon, and the court very properly charged the jury upon that feature of the case. The plaintiff was entitled to recover, if at all, the value of the property for the most advantageous and valuable uses to which it was adapted, or for which it was available. This, in effect, was stated by the court; and, while we do not unreservedly approve of the language

used in the instruction as given, we are of the opinion that the jury was not misled by it, or a greater recovery was had than is warranted by the evidence, nor was the plaintiff prejudiced thereby.

In *Burlington & M. R. R. Co. v. Gorsuch*, 47 Nebr., 767, 775, it is said in the opinion: "Some of the instructions which were given, and to which objections were made and have been here urged, should probably not have been given in form and substance as they were, but the jury were not misled by them, nor did any prejudice result therefrom to the rights of the complaining party."

In *Carstens v. McDonald*, 38 Nebr., 858, 861, Chief Justice NORVAL, speaking for the court, says: "The giving of an erroneous instruction, when it does not have the tendency to confuse and mislead the jury, is not sufficient reason for vacating the judgment and granting a new trial." To the same effect is *Stein v. Vannice*, 44 Nebr., 132.

The jury returned a verdict fixing plaintiff's damages at $800, with interest thereon amounting to $74.66. The testimony of the different witnesses placed the value of the property at from $200 to $2,400. A disinterested witness engaged in the real estate business placed the value at $1,500. The jury saw the different witnesses, and heard their testimony as to the value of the property. They are the judges of their credibility, and the weight to be given to the testimony of each, and their verdict, in this respect, is supported by the evidence.

Perceiving no reversible error, the judgment of the lower court is

                                        AFFIRMED.