CITY OF OMAHA ET AL. V. STATE OF NEBRASKA, EX REL. ALPHONSE METZGER.

FILED MAY 6, 1903.  No. 13,096.

1. **Eminent Domain:** DAMAGES. The provision of section 158, chapter 12a, Compiled Statutes, 1901, relative to the assessment of damages against abutting and adjacent lands, for lands appropriated by a city in the exercise of the right of eminent domain, does not contemplate the creation of a fund thereby to pay the owners of lands appropriated, but provides a means whereby the city may reimburse itself, in whole or in part, for payment made to such owners.

2. **Tortious Appropriation:** REMEDY OF OWNER. Where a city tortiously appropriates private land to the public use, the owner of the land thus appropriated is not bound to look to the fund contemplated by said section 158 for the payment of a judgment, rendered in an action brought by him to recover damages for such appropriation of his property.

3. **Construction of Statute.** The "special fund" referred to in section 7 of said chapter has no reference to the assessment levied in pursuance of said section 158, but refers to a levy made for the payment of a specific judgment in pursuance of section 2, article VI, chapter 77, Compiled Statutes.

4. **Levy of Assessment:** No PERSONAL LIABILITY. The levy of the assessment contemplated by said section 158 imposes no personal liability upon the owner of the land against which it is assessed.

ERROR to the district court for Douglas county: GUY R. C. READ, DISTRICT JUDGE. *Affirmed.*

*Carl C. Wright* and *W. J. Connell,* for plaintiffs in error.

*Joel W. West, contra.*

ALBERT, C.

In 1894 Fannie Croft, as trustee, held the legal title to a tract of land within the corporate limits of the city of Omaha. In that year, the city took tortious possession of a strip of such tract, for the purpose of widening one of its streets, without any proceedings to condemn the same as required by law for the exercise of the right of eminent domain.

Afterward, said trustee brought an action, in the district court for Douglas county, against the city to recover damages for the wrongful appropriation of her property, in which she recovered a judgment for $874.66, and costs of suit. The judgment of the district court was affirmed by this court March 21, 1900. *City of Omaha v. Croft,* 60 Neb. 57. Afterward, and before the proceedings had for the levy of the special assessment hereinafter mentioned, the ownership of the judgment, and the title to the tract of land, less the strip appropriated by the city, passed to a third party, who in turn assigned the judgment to the relator in this case.

On the 11th day of April, 1901, the city council, by resolution, directed the city engineer to prepare a plan of assessment to pay the judgment, and submit the same to the city board of equalization. The city engineer prepared and submitted a plan, which contemplated a levy of a special assessment against the tract of land from which the strip was taken, of $874.66, the full amount of the damages recovered in the action hereinbefore mentioned. The plan was adopted by the city council, and, on the 13th day of June, 1901, a special assessment in the sum of $874.66 was accordingly equalized and levied against the tract of land in question. The assessment was never paid.

Afterward, the city paid into court the costs and in-

terest accrued on the judgment, and tendered the assignee of the judgment a warrant drawn against the special fund sought to be created by the levy above mentioned. The assignee of the judgment refused to accept such warrant, and made demand of payment of the remainder due on the judgment. The city refused to comply with such demand, and the assignee of the judgment instituted proceedings in the district court against the city and its proper officers, asking a writ of mandamus requiring the issuance of a warrant drawn against the general fund, or general judgment fund, of the city for the payment of the remainder due on his judgment. The issues were made up, and the cause submitted to the court, where the foregoing facts were conclusively established by the pleadings and the evidence.

The trial court found all the issues in favor of the relator, "except upon the issue raised pertaining to the validity of the special assessment and levy," hereinbefore mentioned, and granted the writ as prayed. The respondents bring the case here on error.

The only question presented in this case is, whether the relator is required to look to the fund sought to be raised by the special assessment, above referred to, for the payment of the remainder due on his judgment. The respondents contend that he is, and, in support of that contention we are cited to the following provisions of chapter 12$a$, Compiled Statutes (Annotated Statutes, 7456-7626) :

"Sec. 7. Lands, houses, moneys, debts due the city, and property and assets of every description belonging to any city governed by this act, shall be exempt from taxation, execution and sale; judgments against said city shall be paid out of the judgment fund or when a special fund is created for such purpose, out of such special fund."

"Sec. 158. The council shall have power, and is hereby authorized, to assess the damages awarded or recovered for grading, change of grade, or for the appropriation of private property, upon the lots and lands benefited, which shall abut or be adjacent to the street, avenue or alley graded,

or for the opening, extending or widening of which, private property shall be appropriated, or on which the grade shall be changed, and in case of the appropriation of land for the widening of a street, avenue or alley, the council may consider for the purpose of determining benefits and equalizing such assessment, whether any portion of the street, avenue or alley had been previously donated from any lot or piece of land abutting or adjacent thereto."

It is insisted that the "special fund" referred to in section 7, includes the assessments levied in pursuance of section 158 for damages for the appropriation of private property. We find ourselves unable to accept that construction. Section 158 does not provide for a special assessment to pay the owners of property appropriated the amount awarded or recovered by them therefor, but merely authorizes the city council to assess the amount, so awarded or recovered, against the abutting or adjacent property. In other words, instead of authorizing a special assessment for the payment of damages awarded the owners of the property appropriated, it simply provides a means whereby the city may reimburse itself, in whole or in part, for the amount it may expend in payment of such damages.

That this is the true construction is clear, we think, from other provisions of the city charter. Section 29 prescribes the manner in which the city may exercise the right of eminent domain, and for an award of damages to the owners of the property sought to be appropriated. It also makes the payment of the amount awarded, or a deposit thereof with the city treasurer, a condition precedent to the appropriation of the property. Section 30 provides for an appeal by the owner of the property from the award, and that such appeal shall not delay the taking of the property by the city. If it be true, that the fund created by the levy, authorized by section 158, is a special fund for the payment to the owners of property of the damages awarded or recovered by them therefor, then such assessment and levy, of necessity, must precede an appropria-

tion of the property, because, as we have seen, the payment of the award, or the deposit of the amount thereof with the city treasurer, is a condition precedent to the taking of the property. It is also true, that, if the fund is intended for such purpose, before the assessment is levied, the damages awarded or recovered must be definitely fixed and ascertained, because, until they are, there is no competent basis for the levy for their payment. That the statute does not contemplate that the damages shall be definitely fixed and ascertained before the appropriation of the property, is clear from the fact that section 30 expressly provides that the appeal shall not delay the taking of the property, because, until such appeal is determined, the amount of damages involved are largely a matter of conjecture. We think it inevitably follows, that, as before indicated, the purpose of section 158 is not to provide a fund for the payment of the owner of property appropriated, but that the provisions relating to the subject contemplate the payment of such damages by the city, in the first instance, and that it may reimburse itself for such payments by an assessment levied in pursuance of section 158. That being true, the "special fund" referred to in section 7 has no reference to that for which provision is made by section 158, but refers we think to a levy made for the payment of a specific judgment in pursuance of section 2, article VI, chapter 77, Compiled Statutes (Annotated Statutes, 10699), which requires a municipality to make a levy, in sufficient amount to pay a judgment obtained against it, when the general levy is insufficient.

The respondents insist that the present owner of the land in question who assigned the judgment to the relator is bound, in equity and good conscience, to pay the special assessment, and, inferentially, that the relator stands in no better position than would such assignor had this proceeding been brought on his relation; consequently, that he is in no position to complain because, upon the payment of the special assessment, the fund thereby sought to be created would be sufficient to pay the warrant drawn

against it for the remainder due on the judgment. We can not concur in this view. A special assessment against real estate creates no personal liability. Whether the owner of the property shall pay such assessment, or allow the property to be sold for it, is purely optional. *Grant v. Bartholomew*, 57 Neb. 673. Had the city proceeded lawfully to condemn the land, the owner would have been entitled to compensation from the city, regardless of any unpaid assessments levied against her real estate. Neither she nor her assigns can be held to occupy a worse position because the land was taken tortiously.

The judgment of the district court was right, and we recommend that it be affirmed.

BARNES and GLANVILLE, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.