## CITY OF ATLANTA *v.* NELSON, trustee.

1. This court can not undertake to determine whether or not error was committed by the trial judge in refusing to permit counsel to ask a witness and have him answer a given question, when it does not appear what the answer would have been had it been made.

2. In a suit against a municipal corporation by an owner of abutting land, to recover damages to his property by reason of the erection of a viaduct over the street on which the property abutted, it was no ground for new trial, under the facts of the case, that the court excluded the testimony of a witness that he thought the property would be enhanced in value on the supposition that it had railroad facilities.

3. In an action to recover damages to abutting property on account of the erection of a viaduct, the trial of which occurs several years after its

completion, where one of the facts relied on to demonstrate an enhanced value of the property is the increased travel on the street by the property since the improvement, the testimony should be so restricted as to time as to afford a reasonable inference that the increase of travel is due to the public improvement, and not to other causes, such as the growth of the city, the shifting of business or population centers, and the like.

4. The measure of damages for an injury to abutting property caused by a change in the grade of the street is the difference, if any, in the market value of the property before and after the change in the grade, as caused by such change. An instruction wherein it is stated that the market value of the property is that "immediately" before and after the change in the grade, but which is otherwise in harmony with the rule above stated, will not require a new trial.

5. In ascertaining the fair market value before and after the change in the street, the property is to be regarded as a unit, taking into consideration any and all uses to which it is adapted. And while its value for a particular use is not the test of market value, it may be considered with a view to ascertaining what the property will bring in the market. The excerpts from the charge, quoted in the fifth division of the opinion, are not approved as being accurate; but, for the reasons therein stated, they are not deemed prejudicial to the plaintiff in error.

6. A charge to which exception is taken was introductory to an instruction that an abutter can not claim damages for any diminished market value of his property, caused by the closing of a street that he agreed to be closed; and such charge was not calculated to be misunderstood by the jury as an instruction that the right of ingress to and egress from the property was to be included in the assessment of damages as separate and independent items.

7. The damages awarded by the jury were much less than the amount fixed by the testimony of the plaintiff's witnesses, and the verdict can not be regarded as excessive.

SEPTEMBER 16, 1914.

Action for damages. Before Judge Pendleton. Fulton superior court. July 21, 1913.

*James L. Mayson* and *W. D. Ellis Jr.*, for plaintiff in error.

*C. T. & L. C. Hopkins,* contra.

EVANS, P. J. The City of Atlanta projected Washington Street over the railroad tracks at the northern end of it, to a street on the northern side of the tracks, by means of a bridge or viaduct of the same width of the street. The viaduct and its approaches changed the grade of the street in front of the property of the Episcopal Church. The trustee of the church property instituted an action to recover damages consequentially resulting to the property from the construction of the viaduct. The case was tried and a verdict was rendered, which was set aside by this court. *Nelson* v. *Atlanta,*

138 *Ga.* 252 (75 S. E. 245). On the second trial a verdict was rendered in favor of the plaintiff, and this writ of error is to the refusal of the court to set it aside on motion for a new trial.

1. Complaint is made that the court refused to allow certain witnesses to answer questions propounded to them. The nature of the answer which would have been given by the witness is not disclosed. The assignment of error on that account is defective. *Atlanta Consolidated St. R. Co.* v. *Bagwell,* 107 *Ga.* 157 (33 S. E. 191).

2. A witness was asked, "Suppose it [referring to the property of the plaintiff] has railroad facilities, wouldn't that largely increase its value?" The answer was, "I think it would." The court ruled out the question and answer. The city contends that the evidence was competent as illustrating the use to which the property of the plaintiff could be put after the building of the viaduct, as compared to the uses made of it prior to the time of the building of the viaduct. There was evidence that a railroad company had built its yards adjacent to the property. The tracks were below the level of the premises and of the viaduct. The contiguity of the railroad tracks, under the condition of the property, rendered it highly supposititious or speculative as to whether the plaintiff's property had any railroad facilities. Certainly a new trial will not be granted on account of the refusal of the court to allow a value for a supposititious use to be considered in arriving at market value.

3. The trial occurred several years after the construction of the viaduct; and the city offered testimony that the travel over the viaduct was greater than the travel, before the viaduct was built, along Washington Street from and into Waverly Way, a street that was closed by the viaduct. It would have been competent to prove, as one of the elements entering into the value of the abutting property, the difference in travel on the street in front of the abutting property before and after the construction of the viaduct. The range of time respecting the travel after the construction of the viaduct should be limited to such time as would reasonably show that the travel resulted from conveniences and opportunities afforded by the viaduct. After several years have elapsed this increase in travel may be due to other causes, such as the increase in

population, the shifting of residential and commercial centers, and the like. Under these circumstances, it was not reversible error to exclude the testimony.

4. The court charged: "Was the property of the plaintiff worth less in the market *immediately* after the building of the viaduct, than it was *immediately* before the building of the viaduct; and if so, was the diminution in the market value caused by the building of the viaduct? If so, the property was damaged; if not, it was not damaged." It is admitted by the plaintiff in error that the rule for the assessment of damages to abutting property caused by a change in the grade of a street is the difference in the market value of the property before and its market value after the construction of the public improvement; but that the court's use of the word "immediately" unduly restricted the jury to the instant of time at which the computation of value should be taken. When the case was formerly before this court the measure of damages was held to be the diminished market value of the property due to the construction of the public improvement. The court fairly instructed the jury upon this rule respecting the measure of damages; and the excerpt from the charge, when considered in connection with the tenor of the whole instruction, is not fairly susceptible of the meaning that the precise moment of time when the work was begun and when the work ended was contemplated, but that "immediately" was meant, in the connection in which it was used, to embrace a reasonable period of time before and after the construction of the improvement, as a basis of estimating the market value. Widman Inv. Co. v. St. Joseph, 191 Mo. 459 (90 S. W. 763).

5. The following instructions are said to be erroneous: (1) "In ascertaining the market value of plaintiff's property, you are limited to two dates: first, when the viaduct was begun; and second, when it was completed. You will take the first date, and ascertain what was the fair market value of the property as it physically existed before work was done on the viaduct, consider any use to which it was being put, or to which it could be put, but taking that market value which represented its highest present use; and you will then take the physical condition of the property as it existed when the viaduct was completed, and ascertain its then market value for any use to which it was being or could be devoted, but accepting that market value which represented its highest present

use. But, in ascertaining this market value, you are to eliminate any and all values which may have been subsequently produced by the growth of the city, or from improvements subsequently erected in the vicinity by persons or corporations other than the city. In estimating market value, only such benefits as may have been directly created by the viaduct alone can be considered." (2) "In arriving at the market value of the plaintiff's property, you are authorized to consider all the uses to which the property is being put, or could be put; but you are to select that particular use which represents its highest market value. If the property, for illustration, was worth in the market the sum of one hundred dollars when devoted to one use, and was worth a hundred and fifty dollars when devoted to another, you must then accept the highest use, and deal with the market value when devoted to that use." The exception to excerpt (1) is, because of the instruction that the jury shall accept that market value which represents the highest present use. The exception to excerpt (2) is, "that the jury was told to take the particular use, prior to the construction of the viaduct, representing its highest market value and fixing the value according to that; whereas the rule of law is that the jury should consider these uses and fix the market value, considering the property as a whole, without regard to its particular adaptation to any particular use." When we had the case under consideration before, we laid down the rule that the diminished market value of the abutting property attributable to the construction of the viaduct was the measure of damages; that in ascertaining whether the construction of the viaduct had diminished or increased the market value of the property, the property was to be considered as a unit, and all the uses to which it could be put, either before or after the construction of the viaduct, were to be considered as illustrating the difference in market values. The evidence disclosed that the property was suitable for the purpose to which it was already devoted, as well as to residential and commercial use. Witnesses were produced by both sides, who testified respecting the market value of the property as affected by the uses to which it could be put, or to which it was adapted, both before and after the construction of the viaduct. None of these witnesses testified as to its value based upon any particular use. Some of them were of the opinion that the market value of the property, taking into consideration all the uses to

which it was adapted, was diminished, while others were of the opinion, from the same consideration, that the market value was increased. In *Young* v. *Harrison,* 17 *Ga.* 30, 39, which concerned the condemnation of land abutting on a stream, for a bridge site, it was said that "it was proper for the court below to charge the jury that, in order to ascertain the value of the land in question as a bridge site, they would have to inquire [into] the probable extent of the town or village, the amount of travel, tolls, commerce, and the probable value of warehouses, wharves, etc., to grow up on the other side of the river;" and that for this purpose it was proper to admit testimony to this effect by witnesses. The court evidently had in mind this principle, but his language did not accurately lay down the rule. But in view of the fact that none of the witnesses testified as to the value which any particular use would give to the property, and of the further fact that the city was contending, and introduced evidence to sustain such contention, that the construction of the viaduct rendered the property adapted to commercial purposes, and on that account gave to the property a market value in excess of what it would have had for any other use without the viaduct, while not approving the instruction as containing an accurate statement of law, we hold that the city was not prejudiced thereby. City of Omaha *v.* Croft, 60 Neb. 57 (82 N. W. 120).

6. One of the issues submitted to the jury was the effect of the closing of Waverly Way upon the property; the city contending that this street was closed by the consent of the owner of the property in question. The plaintiff, on the other hand, denied that it ever consented to such closing, and contended that its closing interfered with the right of ingress to and egress from its property. The court charged: "An injury to ingress and egress caused by the construction of the viaduct is legal injury for which compensation must be paid, unless the benefits flowing directly and alone from the viaduct have increased the market value sufficiently to offset any injury which may have been inflicted. If the street known as Waverly Way had been closed by the railroad before the construction of the viaduct was completed, and had not and could not be used as a street, and the plaintiff in this case consented to such closing by the railroad, you could not consider any damage to the plaintiff's property by the closing of Waverly Way in this case, which is a suit to recover damages to property on account of

the construction of the viaduct. If Waverly Way was closed by the city, and not by the railroad, in the construction of the viaduct, you would consider its closing in determining the question of damages." The first sentence of this excerpt is excepted to as being the equivalent of an instruction that injury to ingress and egress must be compensated for, unless consequent benefits sufficiently increase the market value to offset the injury so inflicted; whereas the true rule of damages was the difference in the market value of the property before and after the construction of the public improvement. It will be seen that the court gave this instruction, not as affording an independent element of damage, but as preliminary to the instruction as to the effect of the closing of Waverly Way as a means of ingress to and egress from the plaintiff's property. Taken in connection with the whole charge, the jury could not have understood the court to have intended that ingress and egress were to be compensated for as special items; but, on the other hand, his remarks with respect thereto were intended only by way of introduction to the charge with respect to the closing of Waverly Way. Considered in this connection, the instruction does not afford ground for a new trial.

7. Counsel for the plaintiff in error in their brief very earnestly insist that the amount allowed by the jury is excessive. The amount is very much smaller than that fixed by the witnesses who testified in behalf of the plaintiff. After a careful consideration, we are of the opinion that there was ample evidence to support the verdict. The other assignments of error, not specifically noted, are without merit. The court did not abuse his discretion in refusing a new trial.      *Judgment affirmed. All the Justices concur.*